UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

P. STEPHEN LAMONT,

                              Plaintiff,

        v.                                              No. 16-CV-7746 (KMK)

                                                        OPINION AND ORDER
LESLIE FARUCCI; NOREEN T.
ROTHMAN; COUNTY OF
WESTCHESTER; JOHN DOE; JANE
DOE,[1]

                              Defendants.

Appearances:

P. Stephen Lamont
Wellington, FL
*Pro Se Plaintiff*

Fay Angela Jones, Esq.
Westchester County Attorney's Office
White Plains, NY
*Counsel for Defendants*

---

[1]      Although the Complaint lists John Doe and Jane Doe as Defendants in this Action, as the Court noted in an Order of Service, Plaintiff "fails to allege in the body of the [C]omplaint any facts about these [D]efendants and is therefore not entitled to assistance in identifying" them. (Order of Service 2 n.1 (Dkt No. 9).)  Defendant conceded in a subsequent letter to the Court that he "has no evidence of any involvement of" these Defendants, and "should any evidence surface, Plaintiff may avail himself of filing an Amended Complaint."  (Letter from Plaintiff to Court (Nov. 23, 2016) 2 (Dkt No. 11).)  Plaintiff has never moved to amend the Complaint, identified these Defendants, or otherwise served them.  Indeed, his Motion for a Preliminary Injunction, filed the same day as the Complaint, does not list John Doe or Jane Doe in the caption.  (Mot. for Prelim. Inj. (Dkt. No. 3).)  Therefore, John Doe and Jane Doe are dismissed as parties from this Action, and the Clerk of Court is directed to amend the caption accordingly.

KENNETH M. KARAS, District Judge:

Pro se Plaintiff P. Stephen Lamont ("Plaintiff") filed the Complaint, pursuant to 42 U.S.C. § 1983, against Leslie Farucci ("Farucci"), a social caseworker in Westchester County Department of Social Services ("DSS"), Noreen T. Rothman ("Rothman"), an Assistant County Attorney for Westchester County, and the County of Westchester ("the County") (collectively, "Defendants").[2] (*See* Compl. (Dkt. No. 2).) Plaintiff alleges that Defendants violated Plaintiff's parental rights under the Fourteenth Amendment when they changed the school district of his son, "S.L.," who was previously placed in the custody of DSS, without Plaintiff's consent. (*See generally* Compl.)[3]

Before the Court is Defendants' Motion To Dismiss the Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (*See* Notice of Defs.' Mot. To Dismiss (Dkt. No. 45); Mem. of Law in Support of Defs.' Mot. to Dismiss ("Defs.' Mem.") (Dkt. No. 46).) Defendants claim that the Court lacks subject matter jurisdiction over Plaintiff's claims because they are barred by the *Younger* abstention and *Rooker-Feldman* doctrines, and that the Complaint fails to state a claim. (Defs.' Mem.) For the following reasons, Defendants' Motion is granted.

---

[2] Plaintiff also sued Robin D. Carton, the law guardian for Plaintiff's minor son, "S.L," but all claims against Carton have been dismissed with prejudice. (*See* Dkt. No. 36; Dkt. (entry for February 1, 2017).)

[3] The Complaint is labelled as also raising "supplementary claims," but never identifies them. (Compl. 1.) Indeed, the Complaint identifies only three "counts": (1) violation of § 1983; (2) violation of the Fourteenth Amendment; and (3) violation of parental rights. (Compl. ¶¶ 52–57.) Even assuming the third category could be a state law claim, Plaintiff cites only federal cases involving federal claims of parental rights, and identifies no state statutes or common law purportedly violated. Thus, to the extent the Complaint raises a state law claim, it is dismissed without prejudice.

## I. Background

### A. Factual Background

The following facts are drawn from Plaintiff's Complaint and documents attached to it, (Dkt. No. 2), papers submitted in response to Defendants' request for a pre-motion conference, (Letter from Plaintiff to Court (Dec. 30, 2016) ("Obj. Letter") (Dkt. No. 25)), various other papers submitted to the Court, (Letter from Plaintiff to Court (March 16, 2017) ("Post-Conference Letter") (Dkt. No. 41); Letter from Plaintiff to Court (March 24, 2017) ("Request to Return S.L. to Rye High School Sua Sponte Letter") (Dkt No. 42); Letter from Plaintiff to Court (November 6, 2017) ("Permanency Hearing Report Letter") (Dkt. No. 68)), and Plaintiff's opposition to the Motion To Dismiss, (Pl.'s Mem. of Law in Opp'n to Mot. To Dismiss ("Pl.'s Mem.") (Dkt. No. 53)), and are taken as true for the purpose of resolving the instant Motion.[4]

On January 15, 2015, Plaintiff learned that he had been reported to state officials for "lack of guardianship," for failing to provide food, clothes, and shelter, of his minor son, "S.L." (Pl.'s Mem. ¶¶ 2–3.) The next day, pursuant to an order of the Westchester County Family Court, S.L. was removed from Plaintiff's custody and placed in DSS' custody, pending the

---

[4] The Court also takes judicial notice of several publically available documents from New York State Family Court submitted by Defendants as exhibits to a Declaration in support of the Motion To Dismiss and referenced extensively in Plaintiff's opposition papers. (*See* Decl. of Fay Angela Jones, Esq. ("Jones Decl.") (Dkt. No. 47); Pl.'s Mem. ¶¶ 1–32; Post-Conference Letter at 1–2). *See Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 502 n.1 (S.D.N.Y .2016) ("In deciding a motion to dismiss under Rule 12(b)(6), a court can take judicial notice of court documents." (internal quotation marks omitted)). However, aside from the court documents provided, the parties also assert conflicting dates, names, and purposes for many of the proceedings that occurred in Family Court. The Court does *not* rely on documents referenced in the Parties' papers but not provided or mentioned in publically available court documents, nor does it accept Defendants' assertions of what was done or said on certain dates absent a publically available court document establishing judicially noticeable facts. Indeed, although the Parties recount numerous Family Court proceedings relating to Plaintiff's custody of S.L., they are not relevant to deciding the instant Motion, and therefore the Court will not describe all of them in this Opinion. (*See* Pl.'s Mem. ¶¶ 1–25; Defs.' Mem. 2–4.)

outcome of ongoing permanent removal proceedings. (Jones Decl. Ex. B. ("Dec. 8, 2016 Permanency Hearing Order") 1 (citing January 16, 2015 Order on Application for Temporary Removal of Child (Before Petition Filed) (Katz, J.));[5] Request to Return S.L. to Rye High School Sua Sponte Letter 2 ("[I]n January 2015, [S.L.] was wrongly removed from his Father's custody.").) S.L.'s placement with DSS was upheld on January 23, 2015 and again on March 10, 2016. (Jones Decl. Ex. C ("August 4, 2016 Order of Fact-Finding and Disposition") 2 (citing January 23, 2015 Order on Application for Temporary Removal of Child (After Petition Filed) (Katz, J.) and March 10, 2016 Permanency Hearing Order (Katz, J.)).)[6] On August 4, 2016, following a fact-finding and dispositional hearing conducted over four sessions, two of which Plaintiff appeared at with counsel, Christina T. Hall ("Hall"), and two of which only Hall appeared at, the Family Court adjudicated S.L. "neglected" by Plaintiff, (August 4, 2016 Order of Fact-Finding and Disposition at 2–5, 8–9), and ordered that S.L. remain in the custody of DSS, (*id.* at 10).[7] As of March 11, 2017, this order was pending on appeal in the New York Appellate Division, Second Department. (Post-Conference Letter at II.)

---

[5] The Court adopts the page numbering set forth by the Family Court in its orders submitted by the Parties, rather than the ECF-generated page numbers, although some of these documents do not begin labelling page numbers until several pages in. Thus, for example, what the Court considers page 1 of the Dec. 8, 2016 Permanency Hearing Order is actually ECF-numbered page 3, because the Family Court's Order begins its own numbering on page 8 (which is ECF-numbered page 10). (*See* Dec. 8, 2016 Permanency Hearing Order.)

[6] Defendants claim that on January 26, 2015, the Family Court held a Permanency Hearing and "approved . . . S.L.'s educational goals." (Defs.' Mem. 2.) However, they do not provide this court document, nor does the court document they do provide actually contain any mention of this hearing of which the Court could take judicial notice. (August 4, 2016 Order of Fact-Finding and Disposition.)

[7] Defendants claim that "[t]he proposed change to S.L.'s school district was discussed in court" during these hearings, but do not cite to a judicially noticeable document or fact to this effect. (Defs.' Mem. 2.)

On July 27, 2016, Frank R. Alvarez, Superintendent for the Rye City School District, informed Plaintiff, in response to e-mail requests from Plaintiff, that "if [S.L.] needs transportation [to school], the District is ready to provide." (Compl. ¶ 26(c); *Id.* Ex. C.) However, on August 5, 2016, Farucci, a senior social caseworker in the Child Welfare Services/Foster Care unit of DSS, sent a letter to Plaintiff stating:

> I must also inform you that effective this fall school year (2016), [S.L.] will not be attending Rye High School. This is due to the long commute he would have to endure to and from school and it also prevents him from participating in any extra-curriculum activities.

(Compl. Ex. A; *see also* Compl. ¶ 10 ("By letter of August 8, 2016, attached herein as Exhibit 'A', . . . Farucci[] stated that a unilateral decision was made to change the school district of Plaintiff's son, [S.L.,] without Plaintiff's consent."); *id.* ¶ 20(c) ("Farucci . . . arbitrarily and capriciously changed school districts of [S.L.]").)[8] On August 9, Plaintiff sent Farucci "a warning, with no reply, stating that doing so would violate Plaintiff's parental rights." (Compl. ¶ 11.) On or about August 11, 2016, Plaintiff's Family Court counsel, Hall, spoke on the telephone with Rothman, an Assistant County Attorney for Westchester County, and "advised her that changing school districts without parental consent was a violation of parental rights." (*Id.* ¶ 13.) Rothman "simply replied 'we are changing school districts.'" (*Id.*; *see also id.* ¶ 20(c) (alleging that Rothman "condoned" the school district change); *id.* ¶ 48 ("Rothman conspired with DSS.").)[9] On September 7, 2016, Plaintiff spoke on the telephone with DSS manager

---

[8] Plaintiff also alleges that he had previously taken an elevator ride with Farucci at an unspecified location in Westchester during which "Farucci stated 'DSS takes no position on school districts.'" (Pl.'s Mem. ¶ 36.)

[9] In his opposition papers, Plaintiff claims that Rothman made this statement in August 2015, not 2016. (Pl.'s Mem. ¶ 37.) The Court is confused by this, because Plaintiff alleges many times elsewhere in his papers that he received no notice of the decision to change the school district until 2016. (*See, e.g.*, Compl. ¶¶ 10–14.) Plaintiff also states that Rothman "just

Christina Cartagena, who informed him "that DSS had in fact changed school districts of [S.L.]." (*Id.* ¶ 13; Pl.'s Mem. ¶ 33 (same); *id.* ¶ 21 ("On September 7, 2016, Plaintiff learned that DSS had changed [S.L.'s] school district without Plaintiff's consent. . . .").)  However, Farucci, Rothman, and DSS did not file "an application in Westchester Family Court to change school districts."  (Compl. ¶ 26(b); *see also id.* ¶ 51 (same); Pl.'s Mem. Ex. B (email from Christina Hall, Esq. to Plaintiff stating that "I have sent you copies of ALL orders with the court and do not recall any judge signing an order stating that the child's school can be changed.").)

S.L. was moved from the Rye City School District, "ranked #2 in Westchester County[,] to John Jay School District, an unranked school district." (Compl. ¶ 30.)  As a result, S.L., "an elite level soccer player," would be forced "to play soccer for a Class B team as opposed to a Class A team," thereby "impact[ing] the thousands of dollars that Plaintiff has invested in S.L.'s soccer career." (*Id.* ¶ 31; Compl. Ex. D.)  As a "further effect" of this school district transfer, S.L. will lose "the use of a brand new science wing and labs at Rye High School," affecting "the hundreds of thousands of dollars that Plaintiff has paid in school taxes over the last fourteen years in the Rye City School District." (*Id.* ¶ 32.)  And, at his new school, S.L. was "placed in a nebulous Algebra class" repeating a previous course he took and condensing what should have been "a full year of Algebra 2 in Rye High School," thereby causing "irreparable" "interruption of [S.L.'s] Algebra regime." (Obj. Letter 2.)  S.L. also was not "placed in [b]and class, notwithstanding the fact that he has played the trombone since 4th grade." (*Id.*)

---

did it [with the DSS and Farucci]" in 2016 but does not attribute this quote to a person or state in what context or to whom it was made.  (Pl.'s Mem. ¶ 37.)

On November 1, 2016, a Permanency Hearing was held in Family Court; Plaintiff did not appear, but his counsel did. (Dec. 8, 2016 Permanency Hearing Order 2.)[10] Following the hearing, the Family Court adopted an order on December 8, 2016 requiring that S.L. remain in DSS' custody and modifying S.L.'s permanency goal to placement for adoption, noting that S.L. had already "been placed in a pre-adoptive foster home" and "[a] petition seeking the termination of [Plaintiff's] parental rights . . . [was] currently pending before the [c]ourt." (*Id.* at 3–4; *see also id.* at 8.)[11] The court also modified S.L.'s "educational plan" in its order, stating:

> [DSS] shall take the following steps/and or provide the following services for the education, health and well-being of the child: The child shall be monitored to ensure that he receives all necessary services, including but not limited to educational . . . services.

(*Id.* at 9–10; *see also* Post-Conference Letter at III.)[12] The Family Court proceedings relating to Plaintiff's custody of S.L. are ongoing as of October 2017. (Permanency Hearing Report Letter;

---

[10] The Permanency Hearing was twice adjourned because the first two assigned judges recused themselves. (Dec. 8, 2016 Permanency Hearing Order at 2.)

[11] Plaintiff alleges that the petition to terminate parental rights "was Adjourned with Contemplation of Dismissal" on April 24, 2017, but provides no citation or document to establish this fact. (Pl.'s Mem. ¶ 20.) Although the Court would normally assume this allegation to be true, Plaintiff recently submitted to the Court a Permanency Hearing Report dated September 11, 2017, indicating that proceedings to terminate his parental rights are still ongoing. (Permanency Hearing Report Letter Ex. A ("Sept. 11, 2017 Permanency Hearing Report") 5 ("The current plan is to terminate parental rights so that [S.L.] may be freed for adoption.").) In any event, even if the hearing related to the petition was adjourned, the Court does not understand how this would modify the temporary removal order, S.L.'s placement in foster care, or his purported "educational plan."

[12] Although Defendants claim that S.L.'s educational plan "included S.L. being registered in a new school district, effective September 2016," (Defs.' Mem. 3–4), this detail is not in the court's order, (*see* Dec. 8, 2016 Permanency Hearing Order). Conversely, Plaintiff alleges that, at a hearing on April 24, 2017 in Family Court, months after the Complaint was filed in this Action, Plaintiff informed Judge Schauer "that any action or inaction concerning school districts outside of Plaintiff's parental rights were only under the jurisdiction of the District Court," to which "Judge Schauer agreed when she stated 'I know you have other actions.'" (Pl.'s Mem. ¶ 29.) Plaintiff claims to have attached the transcript containing this exchange as Exhibit A to his opposition papers, but the attached Exhibit contains no such transcript; instead, it says "on

*id.* Ex A (notice of permanency hearing sent to Plaintiff's counsel regarding Permanency

Hearing Report and scheduled hearing on October 16, 2017); Letter from Plaintiff to Court (Dec.

11, 2017) Ex. A ("May 19, 2017 Permanency Hearing Order") (Dkt. No. 69).)

### B. Procedural Background

Plaintiff filed the Complaint on October 4, 2016.  (Compl. (Dkt. No. 2).)  The same day,

Plaintiff also filed a motion for a preliminary injunction against the County prohibiting the

changing of S.L.'s school district.  (Dkt. No. 3.)  The Court granted Plaintiff's request to proceed

in forma pauperis on October 28, 2016.  (Dkt. No. 7.)  On November 15, 2016, the Court issued

an Order of Service, directing service on the named Defendants.  (Dkt. No. 9.)  All Defendants

were served.  (*See* Dkt. Nos. 28–30.)

Defendants submitted letters for a pre-motion conference on December 16 and 20, 2016,

indicating the grounds on which they would move to dismiss.  (Dkt. Nos. 18, 19.)  On December

21, 2016, Plaintiff sent a letter to the Court in response to Defendants' pre-motion letters, in part

requesting that the preliminary injunction be granted and the letters ignored.  (Obj. Letter.; *see*

*also* Letter from Plaintiff to Court (Dec. 30, 2016) (Dkt. No. 26) (requesting the "Emergency

Motion" be granted because "no defendant has opposed it").)  The Court denied Plaintiff's

---

order and submitted according to proof at trial."  (*See id.* ¶¶ 29, 65; *id.* Ex. A.)  In any event,
even assuming this factual allegation is true—that is, that Plaintiff and Judge Schauer made these
statements—the Court need not also assume as true Plaintiff's further assertion that Judge
Schauer's statement *implies* "she is well aware she made no order to change school districts
without plaintiff's consent."  (*Id.* ¶ 29; *see also id.* ¶ 65 ("It has already been established that
there is no court order . . . and the presiding judge in Yonkers Family Court admitted as much by
implication in the April 24, 2017 transcript.").)  Absent more factual detail, the Court does not
find that the statement "I know you have other actions" in response to a purported comment
about this Court's jurisdiction plausibly equates to an admission that Judge Schauer never
approved an educational plan permitting the transfer of S.L.'s school district.

request in two memo endorsements, (Dkt. Nos. 25, 26), and scheduled a pre-motion conference, (Dkt. No. 27).

On February 1, 2017, the Court held a pre-motion conference, at the end of which Defendants' counsel was ordered to submit a copy of a purported Family Court order that authorized DSS' decision to change S.L.'s school district. (Transcript of February 1, 2017 Conference (Dkt. No. 39); Dkt. (entry for February 1, 2017).) On February 10, 2017, Defendants filed a letter to the Court attaching an order purportedly "approving DSS's transfer of [P]laintiff's son S.L. to another school district." (Letter from Fay Angela Jones, Esq. to Court (Feb. 10, 2017) 1 (Dkt. No. 37); id. Ex. A. (same document as Dec. 8, 2016 Permanency Hearing Order).) Plaintiff responded to Defendants' letter on March 16, 2017, contending that "there is no 'underlying action' in Westchester Family Court" and that "[t]he nebulous term 'educational plan'" in the Permanency Hearing Order is insufficient to render Defendants' actions constitutional, because "an 'educational plan' has nothing to do with school districts." (Post-Conference Letter at II–III.)

Pursuant to a memo endorsement by the Court on March 16, 2017 setting a briefing schedule, (Dkt. No. 41), Defendants filed a Motion To Dismiss and accompanying papers on April 28, 2017, (Dkt. Nos. 45–47). Plaintiff opposed the Motion on May 19, 2017. (Dkt. No. 53.) Defendants filed a reply to Plaintiff's opposition on June 16, 2017, (Dkt. No. 54), and Plaintiff sent a letter to the Court containing a proposed sur-reply on July 6, 2017 (Dkt. No. 55). On August 31, 2017, Plaintiff sent a letter to the Court containing a "Modified [Proposed] Order" requesting that Rye City School District "provide unlimited transportation to [S.L.] to and from school including athletics and after school clubs." (Letter from Plaintiff to Court (Aug. 31, 2017) 3 (Dkt. No. 57).) The Court ordered Defendants to respond in a memo endorsement,

(*see id.*), and Defendants opposed Plaintiff's request on the jurisdictional grounds contained in the Motion To Dismiss, (Letter from Fay Angela Jones, Esq., to Court (Sept. 27, 2017) ("Jurisdiction Letter") (Dkt. No. 64)).

On September 28, 2017, the Court issued an order denying Plaintiff's Motion for a Preliminary Injunction. (Dkt. No. 65.) On November 6, 2017, Plaintiff sent a letter to the Court containing an updated Permanency Hearing Report issued by DSS, noting that it does not use "the term 'educational plan.'" (Permanency Hearing Report Letter; *id.* Ex. A.)

## II. Discussion

### A. Standard of Review

Defendants move to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Notice of Defs.' Mot. To Dismiss; Defs.' Mem.) "The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are substantively identical. In deciding both types of motions, the Court must accept all factual allegations in the complaint as true, and draw inferences from those allegations in the light most favorable to the plaintiff." *McCray v. Lee*, 2017 WL 2275024, at *2 (S.D.N.Y. May 24, 2017) (citations and internal quotation marks omitted); *see also Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003), *as amended* (Apr. 16, 2003) ("[T]he standards for dismissal under 12(b)(6) and 12(b)(1) are substantively identical.") However, "in contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Sobel v. Prudenti*, 25 F. Supp. 3d 340, 352 (E.D.N.Y. 2014) (internal quotation marks omitted); *see also McCray*, 2017 WL 2275024, at *2 ("[O]n a Rule 12(b)(1) motion, the party who invokes the Court's jurisdiction

bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6)" (alterations and internal quotation marks omitted)). This allocation of "the burden of proof" is "[t]he only substantive difference" between the standards of review under these two rules. *Fagan v. U.S. Dist. Court for S. Dist. Of N.Y.*, 644 F. Supp. 2d 441, 446–47 & n.7 (S.D.N.Y. 2009) (quoting *Lerner*, 318 F.3d at 128).

### 1. Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (internal quotation marks omitted). "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted), *aff'd*, 561 U.S. 247 (2010); *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as the "threshold question" (internal quotation marks omitted)). A district court resolving a motion to dismiss under Rule 12(b)(1) "must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction[,] [b]ut where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits," in which case "the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (alteration, internal quotation marks, and citation omitted); *see also Ray Legal Consulting Grp. v.*

*Gray*, 37 F. Supp. 3d 689, 696 (S.D.N.Y. 2014) ("[W]here subject matter jurisdiction is contested a district court is permitted to consider evidence outside the pleadings, such as affidavits and exhibits.").

### 2. Rule 12(b)(6)

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted)

(second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' Motion To Dismiss, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (internal quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted);

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted). However, when the complaint is pro se, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted), including, "documents that a pro se litigant attaches

to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a] defendant's request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), and "documents that the plaintiff[] either possessed or knew about and upon which [he or she] relied in bringing the suit," *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).

### B. Analysis

#### 1. *Rooker-Feldman*

Defendants argue that the Plaintiff's claims are barred by the *Rooker-Feldman* doctrine. (Defs.' Mem. 13–14; Jurisdiction Letter.) "Under the *Rooker–Feldman* doctrine, federal district courts lack jurisdiction over cases that essentially amount to appeals of state court judgments." *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (per curiam); *see generally Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482–86 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 415–16 (1923). This is because Congress's grant of federal jurisdiction to review final state court judgments pursuant to 28 U.S.C. § 1257, "vests authority to review a state court's judgment solely" in the hands of the United States Supreme Court. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005). In *Exxon Mobil*, the Supreme Court emphasized that the doctrine is "narrow" and only applies to federal lawsuits brought by "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284; *see also Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (noting that *Exxon Mobil* narrowed the Second Circuit's previously "expansive[ ]" interpretation of the *Rooker–Feldman* doctrine).

After *Exxon Mobil*, the Second Circuit reexamined *Rooker–Feldman* and laid out

> four 'requirements' that must be met before the Rooker–Feldman doctrine applies: First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must 'complain of injuries caused by a state-court judgment.' Third, the plaintiff must 'invite district court review and rejection of that judgment.' Fourth, the state-court judgment must have been 'rendered before the district court proceedings commenced'—i.e., *Rooker–Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

*Green*, 585 F.3d at 101 (alterations omitted) (quoting *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)). "[T]he first and fourth requirements 'may be loosely termed procedural,' while the second and third requirements 'may be termed substantive.'" *Id.* (quoting *Hoblock*, 422 F.3d at 85).

The procedural requirements are not met in this case. Even assuming that the Permanency Hearing Order authorized the change of S.L.'s school district and Plaintiff is thereby inviting the Court to reject that judgment, it was not "rendered before" this Action commenced. *Hoblock*, 422 F.3d at 85; *see also id.* at 89 ("[T]he federal suit must follow the state judgment."). Defendants assert that Plaintiff filed the Complaint on November 17, 2016, "sixteen days after the Order issued by Judge Schauer, approving the change of S.L.'s school district." (Defs.' Mem. 4.) This is incorrect on two fronts. The Complaint was filed on October 4, 2016, (*see* Compl. (Dkt. No. 2)), and Judge Schauer's order was entered on December 8, 2016, although the permanency *hearing* occurred on November 1, 2016, (Dec. 8, 2016 Permanency Hearing Order 12). Because the Permanency Hearing Order was not entered before Plaintiff filed this lawsuit, the second procedural requirement is not satisfied and *Rooker-Feldman* does not bar this Action. *Cf. Hoblock*, 422 F.3d at 89 (describing requirement as satisfied when "the federal suit . . . come[s] after the state suit has unequivocally terminated"); *Charles v. Levitt*, No. 16-2902-CV, 2017 WL 5495510, at *2 (2d Cir. Nov. 16, 2017) (finding "the 'procedural'

requirements" . . . indisputably satisfied" where the state court judgments "were both entered before [the plaintiff] filed [the federal] suit").[13]  Therefore, Plaintiff has satisfied his "burden of proving by a preponderance of the evidence" that subject matter jurisdiction exists in this case. *Tandon*, 752 F.3d at 243.

## 2. *Younger* Abstention

Defendants also argue that, under *Younger v. Harris*, 401 U.S. 37 (1971), the Court should abstain from exercising jurisdiction over Plaintiff's claims because there are pending proceedings in Westchester County Family Court "concerning [P]laintiff's custody rights." (Defs.' Mem. 13–14; *see also* Jurisdiction Letter.)[14]  Under *Younger* abstention, "federal courts should generally refrain from enjoining or otherwise interfering in ongoing state proceedings." *Spargo v. New York State Comm'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir. 2003). However, "abstention is generally disfavored, and federal courts have a virtually unflagging obligation to exercise their jurisdiction." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (internal quotation marks omitted).  And, "unlike the *Rooker-Feldman* doctrine, *Younger* abstention is a 'prudential limitation' grounded in

---

[13] Plaintiff references a complaint he filed on September 30, 2016 that was assigned to Chief Judge McMahon to demonstrate that he initiated this Action before Judge Schauer entered her order. (Pl.'s Mem. ¶¶ 38, 41; *id.* Ex. C.)  The Court assumes Plaintiff is referring to this Action, because it was originally assigned to Chief Judge McMahon before being reassigned to the Court. (*See* Dkt. (entries for October 5, 2016 and November 15, 2016).)  However, the Complaint was filed on October 4, not September 30. (*See* Dkt. No. 2.)

[14] The Court notes that *Younger* is inapplicable to Plaintiff's § 1983 claim seeking money damages. *See Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 196 n. 2 (2d Cir. 2002); *Rivers v. McLeod*, 252 F.3d 99, 101–02 (2d Cir. 2001) (per curiam) (same); *see also Jones v. County of Westchester*, 678 F. App'x 48, 50 (2d Cir. 2017) ("There appears to be little chance that a potential award of money damages would interfere with or disrupt the permanency proceedings that are ongoing in Westchester County Family Court—proceedings concerned with determining the current health, well-being, status, and placement of the minor D.J.").  However, Plaintiff also seeks permanent injunctive relief for the alleged violation of his rights, so the Court still considers Defendants' *Younger* argument. (Compl. ¶ 57(c).)

considerations of comity rather than a 'jurisdictional bar' derived from Article III of the Constitution." *Sullivan v. New York State Unified Court Sys.*, No. 15-CV-4023, 2016 WL 3406124, at *6 (S.D.N.Y. June 17, 2016) (quoting *Kaufman v. Kaye*, 466 F.3d 83, 88 n.1 (2d Cir. 2006)).  The Supreme Court has "clarified that district courts should abstain from exercising jurisdiction only in three 'exceptional circumstances' involving (1) 'ongoing state criminal prosecutions,' (2) 'certain civil enforcement proceedings,' and (3) 'civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Falco v. Justices of the Matrimonial Parts of Supreme Court of Suffolk Cty.*, 805 F.3d 425, 427 (2d Cir. 2015) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 591 (2013)).  "[T]hese three 'exceptional categories' . . . define *Younger*'s scope." *Sprint*, 134 S. Ct. at 591; *see also Schorr v. DoPico*, 686 F. App'x 34, 36 (2d Cir. 2017) (confirming that *Sprint* clarified the three "exceptional circumstances" in which courts should abstain under *Younger*). However, there are "additional factors appropriately considered by the federal court[s] before invoking *Younger*," including whether the ongoing state judicial proceeding "provides an adequate opportunity to raise federal challenges." *Sprint*, 134 S. Ct. at 593 (italics, alterations, and internal quotation marks omitted).[15]

The Court simply does not have enough information at this stage to conclude that it must abstain from exercising its jurisdiction under *Younger*.  As an initial matter, Defendants do not explain *what* pending state court proceeding requires abstention.  Rather, they state only that

---

[15] There are also exceptions to *Younger* abstention, but the Parties do not discuss them and the Court does not find them applicable. *See Diamond "D"*, 282 F.3d at 198 (permitting abstention "upon a showing of 'bad faith, harassment or any other unusual circumstance that would call for equitable relief,'" but noting that "a plaintiff who seeks to head off *Younger* abstention bears the burden of establishing that one of the exceptions applies" (quoting *Younger*, 401 U.S. at 54)).

there is a "pending Family Court proceeding concerning [P]laintiff's custody rights." (Defs.' Mem. 14.) But, it is not clear whether Defendants are referring to *all* of the various Family Court proceedings relating to Plaintiff's custody of S.L.—the temporary removal order, (*see* Dec. 8, 2016 Permanency Hearing Order 1 (citing January 16, 2015 Order on Application for Temporary Removal of Child)), the order adjudicating S.L. "neglected," which Plaintiff appealed, (*see* August 4, 2016 Order of Fact-Finding and Disposition 9; Post-Conference Letter at II), and the ongoing permanency hearings, (*see, e.g.*, Dec. 8, 2016 Permanency Hearing Order; Permanency Hearing Report Letter)—or only the Permanency Hearing Order which purportedly condoned S.L.'s "educational plan," (*see* Dec. 8, 2016 Permanency Hearing Order 9–10). Nor do Defendants explain how these proceedings relate to one another, and what orders, given by which Family Court judges, are being appealed or are otherwise pending. It is therefore difficult to analyze whether the Family Court proceeding falls under one of the "three 'exceptional categories'" requiring abstention. *Sprint*, 134 S. Ct. at 591; *cf. Falco*, 805 F.3d at 428 (finding that "orders relating to the selection and compensation of court-appointed counsel for children are integral to the State court's ability to perform its judicial function in divorce and custody proceedings" and therefore the case "clearly fall[s] within *Sprint's* third category").

Moreover, even assuming there is one unitary "pending Family Court proceeding concerning [P]laintiff's custody rights," (Defs. Mem. 14), "[a]bstention is not in order simply because a pending state-court proceeding involves the same subject matter," *Sprint*, 134 S. Ct. at 588. Rather, federal courts should abstain when providing federal relief would constitute "undue interference with state proceedings." *Id.* Courts have typically abstained under *Younger* when a plaintiff seeks to enjoin state proceedings or invalidate a state court order. *See, e.g.*, *id.* at 588 ("When there is a parallel, pending state criminal proceeding, federal courts must refrain from

enjoining the state prosecution."); *Falco*, 805 F.3d at 428 (challenging a state court's order that the plaintiff, a parent, pay for the attorney appointed to represent plaintiff's children in a divorce proceeding); *Diamond "D"*, 282 F.3d at 193 (seeking to enjoin ongoing state administrative proceedings brought by the New York State Department of Labor against a contractor); *Astoria Gen. Contracting Corp. v. Office of Comptroller of City of New York*, 159 F. Supp. 3d 385, 394 (S.D.N.Y. 2016) (seeking to enjoin the state comptroller from continuing with a hearing against the plaintiffs); *see also Sprint*, 134 S. Ct. at 588 (analyzing, but declining to apply, *Younger* abstention where the plaintiff sought a declaration that a federal statute preempted a state administrative body's order and an injunction against enforcement of that order). Plaintiff is not seeking to enjoin the ongoing Family Court proceedings, nor is he seeking an injunction against the continued removal of S.L. from his custody. (*See* Request to Return S.L. to Rye High School Sua Sponte Letter 2 ("There is nothing the Court can do about the wrongful removal."); Post-Conference Letter at II ("The instant action does not seek the reversal of the determination [in the August 4, 2016 Order of Fact-Finding and Disposition]").) Rather, he is seeking to "permanently enjoin[] [Defendants] from further violation of [§ 1983], violation of the Fourteenth Amendment, and violation of parental rights." (Compl. ¶ 57(c).) Thus, the Court's exercise of jurisdiction over Plaintiff's claims would not constitute "undue interference" with the Family Court proceedings unless the requested relief would enjoin Defendants from complying with the Family Court's orders or would order them to take an action contrary to an existing Family Court order.

However, the Court cannot discern at this stage whether the requested relief would interfere in this way, because it is simply not clear, from Defendants' representations and the exhibits to Defendants' papers, what the Family Court is doing. The Court does not know

whether the Family Court is entering orders only authorizing DSS to maintain custody of S.L. and therefore to make any attendant decisions relating to him that are authorized by state statute pending an adoption or final permanency determination, or whether the Family Court is entering orders authorizing DSS to undertake specific actions related to S.L.  For example, the Parties disagree about whether the December 8 Permanency Hearing Order's approval of an "educational plan" encompasses an authorization for DSS to change S.L.'s school district. (*Compare* Pl.'s Mem. ¶¶ 28, 30, 65 *with* Defs.' Mem. 3–4, 8.)  If the Family Court ordered the school district change and Plaintiff is requesting this Court to invalidate that order by enjoining Defendants to return S.L. to his old school, that relief would likely constitute undue interference with the Family Court proceedings.  But, if the Family Court simply monitors whether it is still in S.L.'s best interests to remain in DSS custody and on track for adoption, it is not clear why the Court should abstain.  The Court could conceivably conclude that Defendants violated Plaintiff's right to make educational decisions for his son and enjoin that practice without interfering in the Family Court's pending decision regarding whether Plaintiff should retain permanent custody of his son.  The Court gives this example not to express an opinion as to the merits of Plaintiff's claim, but only to demonstrate the difficulty of analyzing whether its exercise of jurisdiction would interfere with the pending Family Court proceedings.  The Court therefore declines to abstain under *Younger* from exercising its jurisdiction over Plaintiff's claims at this time.[16]

### 3.  Section 1983

The Complaint sets forth three "counts" alleging violations of (1) § 1983; (2) the Fourteenth Amendment; and (3) parental rights.  (Compl. ¶¶ 52–57.)  However, construing the

---

[16] The Court may reconsider this issue at a later stage in the litigation if it becomes appropriate to do so.  *Cf.* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Complaint liberally, the Complaint only alleges violations of Plaintiff's rights to substantive and procedural due process under the Fourteenth Amendment. (*See* Compl. ¶¶ 21–38 (citing same cases and alleging same facts for violations of the Fourteenth Amendment and "parental rights").) *See Southerland v. City of New York*, 680 F.3d 127, 142 (2d Cir. 2012) (explaining that parents can allege violations of the right to "procedural due process" and "substantive due process" when the state interferes with the "care, custody and management of their children" (internal quotation marks omitted)). Because Plaintiff is suing individuals who purportedly acted under color of state law in violating his constitutional rights, rather than suing New York State, his lawsuit is brought under § 1983, not the Fourteenth Amendment itself. (Compl. ¶ 18–20 (alleging that Defendants were acting under color of state law).) *See* Const. Amend. XIV § 1 ("[N]or shall *any State* deprive any person of life, liberty, or property, without due process of law." (emphasis added)); 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."); *D'Ambrosio v. Bast Hatfield, Inc.*, No. 12-CV-1895, 2015 WL 6454791, at *5 (N.D.N.Y. Oct. 26, 2015) (explaining that a claim against the defendant "based on [his] conduct as a state actor . . . must be brought under [§] 1983"); *Shortell v. Office of Court Admin.*, No. 12-CV-0534, 2012 WL 3230492, at *2 (E.D.N.Y. Aug. 6, 2012) ("The only mechanism for bringing a lawsuit under [the Fourteenth Amendment] is 42 U.S.C. § 1983."); *Pagan v. New York State Div. of Parole*, No. 98-CV-5840, 2001 WL 262611, at *8 (S.D.N.Y. Mar. 15, 2001) (holding that the plaintiff's "due process claims . . . can only be brought under [§] 1983" because the defendant was acting under color of state law). Section 1983 provides a

mechanism "for redress for the deprivation of rights," but "itself creates no substantive rights." *Corley v. City of New York*, No. 14-CV-3202, 2017 WL 4357662, at *5 (S.D.N.Y. Sept. 28, 2017) (quoting *Thomas v. Roach*, 165 F. 2d 137, 142 (2d Cir. 1999)). Thus, Plaintiff's Complaint is properly viewed as raising two due process claims, both under § 1983.

### a. Personal Involvement

Defendants Farucci and Rothman argue that the Amended Complaint should be dismissed against them because they were not personally involved in the alleged violations of Plaintiff's Fourteenth Amendment rights. (Defs.' Mem. 9.) "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (italics and internal quotation marks omitted). In other words, "because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Therefore, Plaintiff must plausibly allege that each of the Defendants' actions fall into one of the five categories identified above. *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

Plaintiff has plausibly alleged Farucci's personal involvement in the alleged

constitutional violations.  The gravamen of the Complaint is that S.L., after being placed in foster

care while in DSS' custody, was transferred to a different, inferior school district without the

consent of Plaintiff, his parent.  The factual allegations relating to Farucci's involvement in these

events are: (1) that on August 5, 2016, she sent Plaintiff a letter informing him of the

"unilateral" decision to transfer S.L., (Compl. ¶ 10; *id.* Ex. A),[17] (2) that she did not reply to

Plaintiff's "warning" that the transfer "would violate Plaintiff's parental rights," (*id.* ¶ 11), and

(3) that "on September 7, 2016 . . . she arbitrarily and capriciously changed school districts of

[S.L.]," a decision that was "condoned" by others, (*id.* ¶ 20(c)).  Taking these allegations as true

and construing the Complaint to "raise the strongest arguments that [it] suggest[s]," *Sykes*, 723

F.3d at 403, Plaintiff alleges that Farucci, a senior social caseworker in the Foster Care unit of

DSS, (*see* Compl. Ex. A), made the decision to change S.L.'s school district while he was in

foster care.  Indeed, Plaintiff also alleges that Christina Cartagena, "[m]anager to . . . Farucci,"

informed him of the completed transfer of S.L.'s school district, plausibly suggesting Farucci

made the decision or was at least involved with it, because her supervisor was aware of it.  (Pl.'s

Mem. ¶ 33.)  Although Plaintiff also alleges in his opposition papers that Farucci told him in

August of 2015 that "DSS takes no position on school districts," (Pl.'s Mem. ¶ 36), drawing all

inferences in the light most favorable to Plaintiff, this fact suggests only that DSS' position

changed or that Farucci acted independently, not that she did not make the decision to transfer

S.L.   The Court therefore denies Farucci's Motion To Dismiss for lack of personal involvement

---

[17] The Complaint alleges that this letter was sent on August 8, but the actual letter, attached as an Exhibit to the Complaint, is dated August 5, 2016.  (*Compare* Compl. ¶ 10 *with id.* Ex. A.)

because Plaintiff plausibly alleged that Farucci "participated directly in the alleged constitutional violation." *Grullon*, 720 F.3d at 139 (internal quotation marks omitted).

### ii.  Rothman

Plaintiff has not plausibly alleged Rothman's personal involvement in the alleged violations of his Fourteenth Amendment rights.  The Complaint contains one non-conclusory factual allegation involving Rothman: that on August 11, 2016, when Hall called Rothman to "advise[] her that changing school districts without parental consent was a violation of parental rights," Rothman "simply replied 'we are changing school districts.'"  (Compl. ¶ 13.)  However, the fact that an attorney for the County reported the actions of her client to opposing counsel does not, without more, constitute direct involvement in the decision to change S.L.'s school district.  Although Plaintiff alleges that Rothman "felt more emboldened in 2016 and "'just did it [with the DSS and Farucci],'" he does not explain what actions Rothman actually took to facilitate the transfer decision made by Farucci and DSS, nor does he attribute this quote to a person or state in what context or to whom it was made.  (Pl.'s Mem. ¶ 37.)  Plaintiff also alleges that Rothman "condoned" the school district change, (Compl. ¶ 20(c)), and that "Rothman conspired with DSS," (*id.* ¶ 48), but provides no further allegations regarding what actions Rothman did or did not take aside from confirming to Hall that the transfer took place.  These conclusory allegations are insufficient to establish Rothman's direct involvement in the alleged constitutional violations.  *See Iqbal*, 556 U.S. at 678 (requiring more than "naked assertions devoid of further factual enhancement").[18]  Because Plaintiff does not allege facts plausibly

---

[18] The Court also notes that, to the extent that Plaintiff is attempting to hold Rothman liable for bringing a case on behalf of and defending the actions of her client, DSS, in the context of a Family Court removal proceeding, this claim is likely barred by absolute immunity.  *See Emerson v. City of New York*, 740 F. Supp. 2d 385, 392–93 (S.D.N.Y. 2010) (explaining that

suggesting that Rothman's involvement falls under any of the other categories of personal involvement required for § 1983 actions, the Court grants Rothman's Motion To Dismiss on this basis. *See Grullon*, 720 F.3d at 139 (listing categories of personal involvement for a supervisory defendant).[19]

### b. *Monell* Liability

The County argues that the Complaint should be dismissed against it for failure to allege a policy, custom, or practice that caused the alleged constitutional violations. (Defs.' Mem. 11–13.) "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Thus, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008). In other words, a municipality may not be liable under § 1983 "by application of the doctrine of respondeat superior." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (italics omitted).

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following:

---

"attorneys who pursue protective child litigation may be afforded absolute immunity as quasi-prosecutors").

[19] Plaintiff also makes numerous assertions about Rothman's actions in other legal proceedings. (*See* Pl.'s Mem. ¶ 20 ("Rothman retaliated against Plaintiff and filed a Petition to Terminate Parental Rights"); *id.* ¶ 28 ("Rothman, who tampers with witnesses and obstructs justice . . . conspired with Counsel to lead this Court to believe that the nebulous term 'educational plan' has anything to do with changing school districts").) These allegations are unrelated to the claims raised in the Complaint and in any event are purely conclusory.

(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y.2010) (citations omitted);

*Patterson v. County of Oneida*, 375 F.3d 206, 226–27 (2d Cir. 2004) (describing methods of

establishing *Monell* liability).  Moreover, a plaintiff also must establish a causal link between the

municipality's policy, custom, or practice and the alleged constitutional injury.  *See City of Okla.*

*v. Tuttle*, 471 U.S. 808, 824 n. 8 ("The fact that a municipal 'policy' might lead to 'police

misconduct' is hardly sufficient to satisfy *Monell'*s requirement that the particular policy be the

'moving force' behind a *constitutional* violation.  There must at least be an affirmative link

between[, for example,] the training inadequacies alleged, and the particular constitutional

violation at issue.").

The Complaint is devoid of any factual allegations meeting these requirements.  Indeed,

aside from listing the County in the caption and as a party, (Compl. ¶ 9), the County is not

mentioned in the Complaint.  Plaintiff alleges that a DSS manager, Cartagena, informed Plaintiff

over the telephone "that DSS had in fact changed school districts," (Compl. ¶ 13), but does not

allege that the transfer decision was undertaken pursuant to a "formal policy" of the County, that

it was done by a policymaking official, that it was done as part of "a custom or usage" that a

supervisory policymaker was aware of, or that it was a result of inadequate training or

supervision of County employees.  *Brandon*, 705 F. Supp. 2d. at 276–77.  A "single act" by a

County employee is insufficient to establish § 1983 liability for the County.  *See Bd. of Cty.*

*Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) ("[I]t is not enough for a §

1983 plaintiff merely to identify conduct properly attributable to the municipality."); *Triano v. Town of Harrison, NY*, 895 F. Supp. 2d 526, 532 (S.D.N.Y. 2012) ("Normally, a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality." (alteration and internal quotation marks omitted)). Therefore, because Plaintiff does not allege any facts plausibly supporting an inference that the County had a policy, custom, or practice of changing the school district of children in DSS custody without parental consent, the Court grants the County's Motion To Dismiss on *Monell* grounds.

### 4. Fourteenth Amendment

Farucci argues that Plaintiff fails to state a claim for violation of his procedural due process rights and his substantive due process rights. (Defs.' Mem. 6–9.) "Parents . . . have a constitutionally protected liberty interest in the care, custody and management of their children." *Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir. 1999). That liberty interest "does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). Accordingly, parents have both a procedural and substantive right to due process when the state deprives them of or interferes with this liberty interest. *Southerland*, 680 F.3d at 142. However, "[t]he constitutional privileges attached to the parent-child relationship . . . are hardly absolute" and may be abrogated if in the best interests of the child. *United States v. Myers*, 426 F.3d 117, 125 (2d Cir. 2005).

Although these general propositions are uncontroversial, there are two problems with applying them mechanically to Plaintiff's claims here. First, most of the cases analyzing this liberty interest do not discuss a parent's interest in the management of the child's education. Rather, they generally involve due process claims relating to the parent's *custody* of the child. *See, e.g.*, *Santosky*, 455 U.S. at 747–48 (analyzing standard of proof required under New York

statute permitting the state to "sever completely and irrevocably the rights of parents in their natural child"); *Southerland*, 680 F.3d at 131–32 (describing the plaintiff's claim "that the removal of [the children] from [the plaintiff's] home violated his substantive due process rights"); *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 275–76 (2d Cir. 2011) (finding no substantive due process violation where a school official's "call to [child services] and the resulting demands and threats from [child services] to the parents . . . did not result in even a temporary loss of custody"); *Tenenbaum*, 193 F.3d at 594–95 (finding procedural due process violation where state officials physically removed a child from school and into state custody "without court authorization or parental consent").  Because Plaintiff is not suing Defendants over the removal of S.L. from his custody, temporary or otherwise, (*see* Request to Return S.L. to Rye High School Sua Sponte Letter 2 ("There is nothing the Court can do about the wrongful removal.")), these cases provide little guidance in analyzing Plaintiff's claims relating to the transfer of S.L.'s school district while in DSS' custody.  (*Contra* Compl. ¶ 38 (arguing that "[t]he implication" of these cases is that a parent's "substantive right to remain together with their children . . . extends to the unilateral right to make . . . educational . . . choices for the child").)[20]  However, the Court notes that the parental interest involved here is less significant than the one implicated by the permanent removal of a child from their parent's custody.

Second, and relatedly, no Party identifies Plaintiff's custodial rights under New York law now that S.L. is in foster care, has been adjudicated neglected, and has a permanency goal of adoption.  However, the state of this law also implicates the strength of Plaintiff's liberty interest

---

[20] Plaintiff quotes the Supreme Court as stating in *Santosky* that "[i]t is the unilateral right of the parent to make decisions for the child concerning healthcare, religion, and education." (Pl.'s Mem. ¶ 39.)  This quote does not appear in *Santosksy*, nor in any other case the Court could find. *See* 455 U.S. 745.

in making decisions regarding S.L.'s education. *See, e.g.*, *Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 817 (8th Cir. 2011) (explaining that the plaintiff's "custodial status"—that is, as "a joint legal custodian of the children" without primary physical custody—gave her the right to participate in "educational decisions" under Iowa law, but her "parenting liberty interest [had] thus been substantially reduced by the terms of . . . state law" (alteration and internal quotation marks omitted)); *Franz v. United States*, 707 F.2d 582, 602 (D.C. Cir. 1983) (explaining that "state regulation of . . . a child's education . . . threatens only moderately the emotional ties between the child and his parents . . . and is less likely [to] significantly . . . affect the relations between the child and a non-custodial parent"). At the very least, the Court notes that Plaintiff's ability to manage S.L.'s day-to-day activities was already restricted once S.L. was placed in foster care. *See Castro v. Windham*, No. 16-CV-8148, 2017 WL 4676644, at *5 (S.D.N.Y. Sept. 19, 2017) ("Given that [the] [p]laintiff's daughter was already in the custody of foster parents, [the] [p]laintiff's rights and ability to make day-to-day decisions about his daughter's care had already been circumscribed by the State."), *adopted by*, 2017 WL 4675776 (S.D.N.Y. Oct. 16, 2017). This conclusion seems particularly true in light of New York statutes authorizing DSS, the agency responsible for the welfare of foster children, to develop an educational plan for each foster child. *See* 18 N.Y.C.R.R. § 430.11(c)(1) ("When it is not in the best interests of the foster child to continue to be enrolled in the same school . . . the agency with case management . . . responsibility for the foster child must coordinate with applicable local school authorities where the foster child is placed in order that the foster child is provided with immediate and appropriate enrollment in a new school . . . ."); New York State Office of Children & Family Services, "Educational Stability of Foster Children," 12-OCFS-INF-04 (June 13, 2012) ("Informational Letter") ("The initial determination of what school placement is in the best interest of the child

shall be made by the child welfare agency.  The judge or judicial officer should inquire about a

child's educational plan." (citation omitted)).  With these issues in mind, the Court addresses

each of Plaintiff's due process claims.

a.  Procedural Due Process

"[T]o present a [procedural] due process claim, a plaintiff must establish (1) that he

possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result

of insufficient process."  *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) (internal quotation

marks omitted).  "The appropriate process depends on the balancing of three factors: (1) 'the

private interest that will be affected by the official action;' (2) 'the risk of erroneous deprivation

of such interest through the procedures used;' and (3) 'the Government's interest, including the

function involved and the fiscal and administrative burdens that the additional or substitute

procedural requirement would entail.'"  *Panzella v. Sposato*, 863 F.3d 210, 218 (2d Cir. 2017),

*as amended* (July 18, 2017) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).  Even

assuming Plaintiff had a liberty interest in controlling S.L.'s school placement, he does not

identify what *process* he was due.  *See DeCastro v. City of New York*, No. 16-CV-3850, 2017

WL 4456554, at *12 (S.D.N.Y. Sept. 30, 2017) (explaining that the court first determines

whether a liberty interest is implicated "and, if it is," then determines "what process is due before

the plaintiff may be deprived of that interest (quoting *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir.

2011))).  The Complaint correctly states that "except in emergency circumstances," parents have

"a procedural due process right to a predeprivation child custody hearing."  (Compl. ¶ 22(a); *see

also id.* ¶¶ 22(b), 34, 35.)  *See Southerland*, 680 F.3d at 142, 149 (explaining procedural due

process standard in the child removal context); *see also Tenenbaum*, 193 F.3d at 593 ("As a

general rule . . . before parents may be deprived of the care, custody or management of their

30

children without their consent, due process—ordinarily a court proceeding resulting in an order permitting removal—must be accorded to them.").  But Plaintiff's claim does not relate to the removal of S.L. from his custody—it involves only the decision about which school S.L. should attend after S.L. was removed from his custody.  Indeed, Plaintiff was afforded multiple hearings in Family Court to challenge that deprivation of custody.

The Complaint also alleges that "judicial process was not accorded both parent and child before the change in school districts."  (Compl. ¶ 24.)  But, Plaintiff does not provide any factual detail regarding *how* the Family Court proceedings failed to comply with due process.  He was represented by counsel at all of the proceedings, had the ability to appeal all of the resulting orders, including the one approving of DSS' unspecified "educational plan," (Dec. 8, 2016 Permanency Hearing Order 9–10), and indeed alleges that he discussed S.L.'s school district with Judge Schauer in open court, (Pl.'s Mem. ¶ 29).  *See also* Informational Letter at V ("The judge . . . should inquire about a foster child's educational plan at [all proceedings] or upon a motion being filed.").  Indeed, Plaintiff alleges that he had notice that DSS may change S.L.'s school district, and he does not allege that he did not receive an opportunity to be heard once the decision was made.  (Pl.'s Mem. ¶ 37 (alleging that Plaintiff "rebuffed" Rothman's proposal to change school districts in 2015, but Rothman "felt more emboldened in 2016").)  These processes afford Plaintiff the process he was due.  *See Johnson v. Myers*, No. 10-CV-1964, 2014 WL 2744624, at *8 n.7 (E.D.N.Y. June 16, 2014), *vacated and remanded on other grounds sub nom. Myers v. Patterson*, 819 F.3d 625 (2d Cir. 2016) (finding that a neglect proceeding "complied with due process" because the "[p]laintiff was represented by counsel throughout the proceeding and she had the opportunity to appeal each and every order rendered by the Family Court but did not"); *Phifer ex rel. Phifer v. City of New York*, No. 99-CV-4422, 2003 WL

1878418, at *11 (S.D.N.Y. Apr. 15, 2003) "(At that point, . . . [the plaintiff] was afforded procedural due process as she was given an opportunity to be heard in the family court proceedings."). And, because S.L. was already in DSS' custody when the alleged deprivation occurred, it is not clear what other pre-deprivation process was required. *See Estiverne v. Esernio-Jenssen*, 833 F. Supp. 2d 356, 371 (E.D.N.Y. 2011) ("[W]hen a child is already in the custody of the state actor when the deprivation occurs, a pre-deprivation hearing is impractical, if not impossible. In such a case, the state actor has a duty to initiate a prompt post-deprivation hearing after the child has been removed from custody.")

Drawing all reasonable inferences in favor of Plaintiff, he may be alleging that Defendants' failure to obtain a court order explicitly authorizing the transfer of school districts denied him due process. (*See, e.g.*, Pl.'s Mem. ¶¶ 33, 35, 44; Letter from Plaintiff to Court (Dec. 11, 2017 (Dkt. No. 69) (arguing that "the burden is on [Defendants] to produce a Permanency Order where the educational plan section" explicitly authorizes the transfer of school districts).) However, even assuming for the sake of this argument that the Family Court's approval of S.L.'s "educational plan" did not constitute approval of the school district transfer, *but see* 18 N.Y.C.R.R. § 430.11(c)(1) (permitting DSS to determine if it is "in the best interests of the foster child" to enroll in a new school); Informational Letter at V (explaining that DSS makes "[t]he initial determination of what school placement is in the best interest of the child" and then the family court judge "review[s] the[] educational plans" for foster children at all proceedings "or upon a motion being filed"), the Court is aware of no case *requiring* a court order to satisfy due process when the liberty interest implicated does not relate to parental custody. *Cf. Southerland*, 680 F.3d at 149 (requiring a court order, parental consent, or an emergency prior to removing a

child from a parent's custody).[21]  And, the Court is cognizant of the fact that the deprivation

alleged here—of Plaintiff's right to make educational choices for his son—requires less process

than an interference with the actual relationship between father and son.  *See Santosky*, 455 U.S.

at 753 (noting that "parents retain a vital interest in preventing the irretrievable destruction of

their family life" and "[i]f anything, persons faced with forced dissolution of their parental rights

have a more critical need for procedural protections than do those resisting state intervention into

ongoing family affairs"); *Lassiter v. Dep't of Soc. Servs. Of Durham Cty., N.C.*, 452 U.S. 18, 27

(1981) ("A parent's interest in the accuracy and justice of the decision to terminate his or her

parental status is . . . a commanding one").  Absent further allegations regarding what process

should have been but was not afforded to him, Plaintiff fails to plausibly allege a procedural due

process claim, and therefore Farucci's Motion To Dismiss this claim is granted.[22]

### b.  Substantive Due Process

"To state a claim for substantive due process a plaintiff must allege that: (1) he had a

valid [liberty or] property interest and (2) 'defendants infringed on that . . . right in an arbitrary

or irrational manner.'"  *Cherry v. New York City Hous. Auth.*, No. 15-CV-6949, 2017 WL

4357344, at *28 (E.D.N.Y. Sept. 29, 2017) (quoting *Royal Crown Day Care LLC v. Dep't of*

---

[21] The Court again notes that the existing precedent on this point deals with process required when children are removed from their parents' custody, not decisions regarding their children's education.

[22] The Court also notes that Plaintiff may have a remedy in a proceeding under Article 78 of the New York Civil Practice Law and Rules.  *See Vargas v. City of New York*, 377 F.3d 200, 208 (2d Cir. 2004) ("We have held that an Article 78 proceeding . . . provides a meaningful remedy where violations of due process by a local governmental entity are alleged."); *Gudema v. Nassau Cty.*, 163 F.3d 717, 724–25 (2d Cir. 1998) (explaining that an Article 78 proceeding provided the plaintiff "with a meaningful remedy in the wake of [the defendant's] order" that she not drive because it "could have been commenced by order to show cause with a request for an immediate stay of the order," the plaintiff could have raised constitutional issues in the proceeding, and the plaintiff could have obtained damages in addition to declaratory and injunctive relief (citations omitted)).

*Health & Mental Hygiene of City of N.Y.*, 746 F.3d 538, 545 (2d Cir. 2014)).  In other words, "[s]ubstantive due process protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill advised." *Cunney v. Bd. of Trs. of Vill. Of Grand View, N.Y.*, 660 F.3d 612, 626 (2d Cir. 2011) (internal quotation marks omitted); *see also Cox*, 654 F.3d at 275 ("To state a claim for a violation of [the] substantive due process right of custody, a plaintiff must demonstrate that the state action depriving him of custody was so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." (internal quotation marks omitted)).  The "conscience shocking" standard is difficult to satisfy, as "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (internal quotation marks omitted); *see also DeMartino v. New York State Dep't of Labor*, No. 16-978-CV, 2017 WL 4422515, at *1 (2d Cir. Oct. 5, 2017) (noting "the high standard required to prevail on a substantive due process claim").

Plaintiff has not plausibly alleged that Farucci's conduct was arbitrary or conscience-shocking.  Although Plaintiff asserts that Farucci "arbitrarily and capriciously changed [S.L.'s] school district[]," this is a legal conclusion lacking any factual support. (Compl. ¶ 20(c).)  In fact, Farucci sent a letter to Plaintiff informing him of the reasons for the change: "the long commute [S.L.] would have to endure to and from school" and the fact that "it also prevents him from participating in any extra-curriculum activities."  (Compl. Ex. A; *see also* Permanency Hearing Report Letter Ex. A at 7–8 (explaining that S.L.'s "school placement was changed due to the distance of the foster home placement").)  That Plaintiff may disagree with this decision, (*see* Pl.'s Mem. ¶ 51 (arguing that "distance from school holds no water"), does not make it arbitrary

or conscience-shocking. *See Cunney*, 660 F.3d at 626 (explaining that substantive due process does not protect "against government action that is incorrect or ill advised" (internal quotation marks omitted)). Indeed, even cases involving more serious deprivations—such as removing a child from a parent's custody—recognize that no substantive due process claim can lie where a caseworker has a "reasonable basis" for his or her actions. *See Southerland*, 680 F.3d at 152 ("[A] parent's substantive constitutional rights are not infringed if a caseworker, in effecting a removal of a child from the parent's home, has a reasonable basis for thinking that a child is abused or neglected."); *Myers*, 426 F.3d at 125 ("The constitutional privileges attached to the parent-child relationship . . . are hardly absolute," and are "counterbalanced by the compelling governmental interest in the protection of minor children." (internal quotation marks omitted)). Plaintiff does not otherwise allege that Farucci's decision was motivated by "bad faith or ill will" towards him or S.L. that would plausibly undercut this reasonable basis. *Wolff v. State Univ. of New York Coll. at Cortland*, No. 13-CV-1397, 2016 WL 9022503, at *22 (N.D.N.Y. Feb. 5, 2016) (granting summary judgment to the defendants on a substantive due process claim because "no reasonable jury could conclude that [the] [p]laintiff's dismissal lacked a rational basis or that it was motivated by bad faith or ill will unrelated to academic performance"), *aff'd sub nom. Wolff v. State Univ. of New York*, 678 F. App'x 4 (2d Cir. 2017); *see also Lewis*, 523 U.S. at 849 (explaining that the behavior "that would most probably support a substantive due process claim" would be "conduct intended to injure in some way unjustifiable by any government interest").

Moreover, Plaintiff's parental rights are already somewhat truncated because S.L. has been removed from his custody, placed in foster care, adjudicated neglected, and put on track for adoption. *See Castro*, 2017 WL 4676644, at *5 (explaining that the plaintiff parent's "rights and

ability to make day-to-day decisions about his daughter's care had already been circumscribed by the State" once she was placed in foster care).  And, although the Court need not delve into the details at this stage, it notes that changes to a foster child's educational status are at least contemplated by New York law.  *See* 18 N.Y.C.R.R. § 430.11(c)(1) (permitting DSS to facilitate a foster child's "immediate and appropriate enrollment in a new school" if "it is not in the best interests of the foster child to continue to be enrolled in the same school"); Informational Letter at V ("The initial determination of what school placement is in the best interest of the child shall be made by the child welfare agency.").  In light of the fact that courts do not find substantive due process violations even when state law *is* violated, this statutory authority is further indication that Plaintiff has failed to plausibly allege conscious shocking or egregious government conduct.  *See Padberg v. McGrath-McKechnie*, 203 F. Supp. 2d 261, 283 (E.D.N.Y. 2002), *aff'd*, 60 F. App'x 861 (2d Cir. 2003) ("[E]ven a violation of state law may not rise to the level of arbitrary and outrageous conduct.").  Accordingly, and in light of the Supreme Court's "reluctan[ce] to expand the concept of substantive due process," *see Case v. City of New York*, 233 F. Supp. 3d 372, 395–96 (S.D.N.Y. 2017) (quoting *Lewis*, 523 U.S. at 842), the Court grants Farucci's Motion To Dismiss Plaintiff's substantive due process claim.[23]

### III. Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss is granted.  However, because this is the first adjudication of Plaintiff's claims on the merits, the dismissal is without prejudice.  If Plaintiff wishes to file an amended complaint, Plaintiff should include within that amended complaint any changes to correct the deficiencies identified in this Opinion that Plaintiff wishes

---

[23] Because Plaintiff has failed to state a claim, the Court need not reach Farucci's alternate argument that she is entitled to qualified immunity.  (Defs.' Mem. 10–11.)

the Court to consider. The amended complaint will replace, not supplement, the original complaint. The amended complaint must contain *all* of the claims and factual allegations Plaintiff wishes the Court to consider. The Court will not consider factual allegations contained in supplemental letters, declarations, or memoranda. If Plaintiff fails to abide by the 30-day deadline, this Action may be dismissed with prejudice.

The Clerk of the Court is respectfully requested to terminate the pending motion, (Dkt. No. 45), and to mail a copy of this Opinion to Plaintiff.

SO ORDERED.

Dated: December 18, 2017
       White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

37